Daniel A. Pollack (applied for admission
 *pro hac vice*)
*dpollack@mccarter.com*
Edward T. McDermott (applied for admission
 *pro hac vice*)
*emcdermott@mccarter.com*
Anthony Zaccaria (applied for admission
 *pro hac vice*)
*azaccaria@mccarter.com*
**McCARTER & ENGLISH, LLP**
245 Park Avenue, 27th Floor
New York, NY 10167
Telephone:  (212) 609-6800
Facsimile:  (212) 609-6921
*Attorneys for Defendants Franklin/Templeton
Distributors, Inc., Charles B. Johnson and
Rupert H. Johnson*

Mark Holland (*pro hac vice*)
*mholland@goodwinprocter.com*
Mary K. Dulka (*pro hac vice*)
*mdulka@goodwinprocter.com*
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone:  (212) 813-8800
Facsimile:  (212) 355-3333
*Attorneys for Defendants Ashton, Carlson, Ginn,
Holiday, Lahaye, Olson, Thompson, Wilson and
Franklin Custodian Funds*

- and -

Lloyd Winawer (State Bar No. 157823)
*lwinawer@goodwinprocter.com*
**GOODWIN PROCTER LLP**
135 Commonwealth Drive
Menlo Park, CA 94025-1105
Telephone:  (650) 752-3100
Facsimile:  (650) 853-1038
*Attorneys for All Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| BRADLEY C. SMITH, derivatively on behalf of FRANKLIN CUSTODIAN FUNDS,<br><br>Plaintiff,<br><br>v.<br><br>FRANKLIN/TEMPLETON DISTRIBUTORS, INC., HARRIS J. ASHTON, ROBERT F. CARLSON, SAM GINN, EDITH E. HOLIDAY, FRANK W.T. LAHAYE, FRANK A. OLSON, LARRY D. THOMPSON, JOHN B. WILSON, CHARLES B. JOHNSON, AND RUPERT H. JOHNSON,<br><br>Defendants,<br>and<br>FRANKLIN CUSTODIAN FUNDS,<br><br>Nominal Defendant. | Case No. C 09-4775 PJH<br><br>**NOTICE OF MOTION, MOTION AND MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS TO DISMISS THE COMPLAINT**<br><br>Date:      April 14, 2010<br>Time:      9:00 a.m.<br>Place:     Courtroom 3<br>Judge:    Hon. Phyllis J. Hamilton |

1

## <u>TABLE OF CONTENTS</u>

2

3

Page

TABLE OF AUTHORITIES ………………………………..…………………  ii

NOTICE OF MOTION AND MOTION ……………………………………… 1

MEMORANDUM OF POINTS AND AUTHORITIES …………………………… 2

ISSUES TO BE DECIDED ……………………………………………....  2

The relevant facts ……………………………..…………….............  2

LEGAL ARGUMENT

Point I --    The First Cause of Action, under Section 47(b)
             of the Investment Company Act, Fails to State
             a Legally Cognizable Claim ……………………………………  4

Point II --   The Court Should Decline to Exercise
              Supplemental Jurisdiction over the State Law
              Claims ………………………………………………....………...  10

Point III --  The Complaint Should Be Dismissed For Failure
              To Comply With Rule 23.1 of the Federal Rules of
              Civil Procedure and Delaware Law ...……………………………..  11

CONCLUSION………………………………………………………….....  17

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

-i-

28

1

2

## TABLE OF AUTHORITIES

3

**Page(s)**

4

CASES

5

*Alexander* v. *Sandoval*,
    532 U.S. 275 (2001) ................................................................................ 6, 7

6

7

*Baron v. Siff*,
    1997 WL 666973 (Del. Ch. Oct. 17, 1997)..................................................... 15, 16

8

*Binder v. Gillespie*,
    184 F. 3d 1059 (9th Cir. 1999), *cert. den.*, 528 U.S. 1154 (2000) ........................................ 11

9

10

*Bonano v. East Caribbean Airline Corp.*,
    365 F.3d 81 (1st Cir. 2004) ................................................................ 6

11

12

*Brown v. Mailroom Processor #14*,
    2007 U.S. Dist. LEXIS 18405 (N.D. Cal. Feb. 27, 2007) ........................................ 11

13

*Catholic Charities CYO v. Chertoff*,
    622 F. Supp. 2d 865 (N.D. Cal. 2008) ................................................ 6

14

15

*Daily Income Fund v. Fox*,
    464 U.S. 523 (1984) ...................................................................... 12

16

17

*Davis v. Bailey*,
    2005 U.S. Dist. LEXIS 38204 ................................................................ 5

18

*Financial Planning Ass'n v. SEC*,
    482 F.3d 481 (D.C. Cir. 2007) ..................................................... 3, 4, 7, 8

19

20

*Furman v. Walton*,
    2007 WL 1455904 (N.D. Cal. May 16, 2007), *aff'd*, 320 Fed.
    Appx 638 (9th Cir. Mar. 26, 2009).................................................. 11, 12, 13, 16

21

22

*Grimes v. Donald*,
    673 A.2d 1207 (Del. 1996)............................................................ 16

23

24

*In re Amer. Mutual Funds Fee Litig.*,
    2009 U.S. Dist. LEXIS 120597 (C.D. Cal. December 28, 2009) ........................................ 3

25

26

-ii-

27

28

*In re General Motors Class E Stock Buyout Sec. Litig.*,
   790 F. Supp. 77 (D. Del. 1992) ................................................................ 15

*In re Mutual Funds Invest. Litig.*,
   519 F. Supp. 2d 580 (D. Md. 2007) .......................................................... 17

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) .................................................................... 12

*Janos v. Wells Fargo Bank, N.A.*,
   2006 U.S. Dist. LEXIS 6758 (D. Ariz. Feb. 14, 2006) ............................... 6

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) ................................................................................... 12

*Levine v. Smith*,
   591 A.2d 194 (Del. 1991) ........................................................... 12, 14, 15, 16

*Mitzner v. Hastings*,
   2005 WL 88966 (N.D. Cal. Jan. 14, 2006) ............................................... 12

*Mutchka v. Harris*,
   373 F. Supp. 2d 1021 (C.D. Cal. 2005) ...................................................... 5

*Northstar Fin. Advisors, Inc. v. Schwab Inv.*,
   609 F. Supp. 2d 938 (N.D. Cal. 2009) ...................................................... 10

*Rojas v. Brinderson Constructors, Inc.*,
   567 F. Supp. 2d 1205 (C.D. Cal. 2008) .................................................... 11

*Save Our Valley* v. *Sound Transit*,
   335 F.3d 932 (9th Cir. 2002) ...................................................................... 6

*Spiegel v. Buntrock*,
   571 A.2d 767 (Del. 1990) .................................................................... 12, 13

*Stegall v. Ladner*,
   394 F. Supp. 2d 358 (D. Mass. 2005) .................................................... 5, 17

*Voight v. Savell*,
   70 F. 3d 1552 (9th Cir. 1995), *cert. den.*, 517 U.S. 1209 (1996) ........... 11

-iii-

**STATUTES AND RULES**

Investment Company Act of 1940
      Section 38, 15 U.S.C. § 80a-37 ............................................................................. 9
      Section 47, 15 U.S.C. § 80a-46 ............................................................................. 3
      Section 52, 15 U.S.C. § 80a-51 ............................................................................. 5

SEC Rule 12b-1, 17 C.F.R. § 270.12b-1 ................................................ 1, 2, 3, 4, 7, 8, 9

SEC Rule 38a-1, 17 C.F.R. § 270.38a-1 ............................................ 1, 3, 4, 5, 7, 9, 10

NASD Rule 2830 ............................................................................................................. 3

Rule 12(b)(6), Fed. R. Civ. P. ........................................................................................ 1

Rule 23.1, Fed. R. Civ. P. .............................................................. 1, 2, 11, 12, 13, 16

-iv-

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 14, 2010, at 9:00 a.m., Defendants Franklin/ Templeton Distributors, Inc., Charles B. Johnson, Rupert H. Johnson, Harris J. Ashton, Robert F. Carlson, Sam Ginn, Edith E. Holiday, Frank W.T. LaHaye, Frank A. Olson, Larry D. Thompson, John B. Wilson and the Franklin Custodian Funds (collectively "All Defendants") will move this Court pursuant to Fed. R. Civ. P. 12(b)(6) and 23.1 for an Order dismissing the Verified Derivative Complaint ("the Complaint") in this action.

The relief All Defendants seek is an Order: 1. dismissing the claim (styled First Cause of Action) under § 47(b) of the Investment Company Act of 1940 ("the Act"), the sole federal claim in the Complaint, with prejudice, for failure to state a claim upon which relief may be granted; 2. declining to exercise supplemental jurisdiction over the State law claims (styled Second, Third and Fourth Causes of Action); or, alternatively, 3. dismissing the Complaint, with prejudice, on the ground that it fails to plead facts, with sufficient particularity, as required by Rule 23.1 Fed. R. Civ. P. and Delaware Law, to overcome the strong presumption in favor of the Trustees' good faith exercise of their business judgment.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the Complaint, together with attached exhibits, as well as all pleadings and proceedings heretofore had in this action, the oral argument (if any) of counsel and any other matter that may be properly submitted.[1]

---

[1]  For the convenience of the Court, we have attached to our Memorandum, as Addenda A, B and C, the text of § 47(b) of the Act, SEC Rule 38a-1 and SEC Rule 12b-1, promulgated thereunder, all of which are discussed in our Memorandum.

NOTICE OF MOTION, MOTION AND MEMORANDUM IN SUPPORT OF MOTION
OF DEFENDANTS TO DISMISS THE COMPLAINT
C-09-4775 PJH
ME1 9521406v.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## ISSUES TO BE DECIDED

1.   Does the First Cause of Action state a legally cognizable claim under § 47(b) of the Act where there is no predicate violation of the Act?

2.   Should the Court decline to exercise supplemental jurisdiction over the State law claims if it dismisses the <u>sole</u> Federal claim?

3.   Does the Complaint plead facts, with sufficient particularity, as required by Rule 23.1 Fed. R. Civ. P. and Delaware Law, to overcome the strong presumption in favor of the Trustees' good faith exercise of their business judgment?

## The relevant facts

1.   On January 8, 2009, Michael Spencer, Esq. of Milberg LLP wrote the Board of Trustees of Franklin Custodian Funds, on behalf of Bradley C. Smith, an owner of Class C shares of the Franklin Income Fund ("the Fund"), a series of Franklin Custodian Funds, demanding (a) cessation of payment of "Asset-Based Compensation" [*i.e.* 12b-1 fees (*see* Complaint, para. 41)] paid by the Fund to broker-dealers, and (b) institution of litigation to recover 12b-1 fees previously paid pursuant to the Fund's 12b-1 Plan.  *See* Exh. 1 to Complaint.

2.   On March 4, 2009, Brian E. Lorenz, Esq. of Bleakley Platt & Schmidt, LLP, counsel to the Independent Trustees of Franklin Custodian Funds, wrote Mr. Spencer advising him that "The Board of Trustees has carefully considered Mr. Smith's demands … and has sought and considered legal advice on the subject matter of the demands.  The Board of Trustees has determined that the demands are not well-founded, as a matter of law, and declines to take the steps, including litigation, that you propose."  *See* Exh. 2 to Complaint.

NOTICE OF MOTION, MOTION AND MEMORANDUM IN SUPPORT OF MOTION
 OF DEFENDANTS TO DISMISS THE COMPLAINT
 C-09-4775 PJH
ME1 9521406v.1

3.    No other events occurred in this case for more than seven months thereafter.   On October 6, 2009, notwithstanding the rejection of his demands by the Independent Trustees, Mr. Smith, through Milberg LLP, filed the Complaint in this action.   Service of process on all defendants was not completed until December 18, 2009.

4.    The Complaint contains one Federal law "cause of action" (sic) under § 47(b) of the Act, 15 U.S.C. § 80a-46, and three State law "causes of action" (sic).   Mr. Smith and Milberg LLP, through the mechanism of the Complaint, seek nothing less than to have this Court abrogate or repeal, by judicial fiat, SEC Rule 12b-1, which has been in effect and has governed mutual fund distribution in the United States for 30 years.[2]   This attack on long-standing industry practice which has been repeatedly approved by the SEC, the NASD (now FINRA) and the Courts[3] is *erroneously* premised on the Opinion in *Financial Planning Ass'n v. SEC,* 482 F.3d 481 (D.C. Cir. 2007).   As discussed at greater length in Point I (2), *infra*, pp. 7-8, that Opinion simply holds that the SEC exceeded its rule-making authority in adding certain broker-dealers to those exempt from registration under the Investment Advisers Act.   No matter how broadly construed, that Opinion does not hold that payment of 12b-1 fees (*i.e.* "Asset-Based Compensation") violates SEC Rule 38a-1, 17 C.F.R. § 270.38a-1 (2003), **Compliance Procedures and Practices of Certain Investment Companies**, the rule apparently relied on by Mr. Smith in the Complaint as the predicate for invoking § 47(b) of the Act.   Indeed, the Opinion in *Financial Planning Ass'n* does not even *mention* SEC Rule 38a-1.

---

[2]   SEC Rule 12b-1, 17 C.F.R. § 270.12b-1, **Distribution of Shares by Registered Open-end Management Investment Company**, allows a fund, pursuant to a Plan approved by its trustees and adopted by its shareholders, to use its assets to compensate broker-dealers who sell shares of the fund.  NASD Rule 2830, Investment Company Securities, sets the limits on the quantum of assets that may be so used.  *See e.g.*, NASD Rule 2830(d)(2).

[3] *See In re Amer. Mutual Funds Fee Litig*., 2009 U.S. Dist. LEXIS 120597, at **121-26 (C.D. Cal. December 28, 2009).

NOTICE OF MOTION, MOTION AND MEMORANDUM IN SUPPORT OF MOTION
 OF DEFENDANTS TO DISMISS THE COMPLAINT
 C-09-4775 PJH
ME1 9521406v.1

5.   This Motion to Dismiss followed, and was duly filed on January 22, 2010.


**LEGAL ARGUMENT**

**Point I --**

**The First Cause of Action, under Section 47(b) of the Investment Company Act, Fails to State a Legally Cognizable Claim**

**Overview**:

The sole section of the Act claimed, in the First Cause of Action, to have been violated is § 47(b).  *See* Complaint, p.21, line 4 *et seq*.  Section 47(b), however, is strictly a remedy section, nothing more:  it provides a mechanism for equitable relief when there is a violation of some *other* section of the Act or a rule, regulation or order under the Act.

The First Cause of Action is fatally flawed for several reasons:

1)  as noted, § 47(b) provides a remedy rather than a distinct cause of action or basis of liability; no other section of the Act is claimed to have been violated, and no rule which Plaintiff has standing to invoke has been violated:  an agency rule, SEC Rule 38a-1, cannot, itself, create a private right of action; that can be done only by Congress; there is no private right of action at bar;

2)  even if there were a private right of action under SEC Rule 38a-1 (which there is not), there are no facts pleaded in the Complaint which, if proved, would spell out a violation of SEC Rule 38a-1; also, *Financial Planning Ass'n*, relied on by Plaintiff, is irrelevant to the payment of the distribution fees (i.e., 12b-1 fees) challenged at bar; additionally, the claim is barred by Section 38(c) of the Act;

3)  furthermore, the only entities SEC Rule 38a-1 applies to, by its terms, are registered investment companies, and Franklin/Templeton Distributors, Inc. (the sole defendant on the First Cause of Action) is, indisputably, not a registered investment company.

4

For each or all of these reasons, the First Cause of Action under § 47(b) must be dismissed.

**1.    Plaintiff has not alleged the necessary predicate violation to invoke § 47(b) of the Act.**

**A.    no "other section"**:   It is settled law that a "[P]laintiff can seek relief under Section 47 only by showing a violation of some other section of the [Act]".  *See Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1027 (C.D. Cal. 2005) (since there is no private right of action under § 36(a) of the Act, claim under § 47(b) must be dismissed).  In *Davis v. Bailey*, 2005 U.S. Dist. LEXIS 38204, at **18-19 (D. Col. December 22, 2005), the Court held:

> Both parties agree in their briefs, and I find, that the equitable remedy set forth in § 47(b)(1) is only available upon a showing of other violations of the ICA.

In *Stegall v. Ladner*, 394 F. Supp. 2d 358, 378 (D. Mass. 2005), the Court held:

> ICA § 47(b) provides a remedy rather than a distinct cause of action or basis of liability.

At bar, it is indisputable that, in the First Cause of Action, no violation of any other section of the Act is alleged.[4]

**B.    no "rule"**:   Plaintiff's alleged basis for seeking a remedy under § 47(b) — violation of SEC Rule 38a-1 — does not provide the necessary predicate for a claim under § 47(b). As this Court is well aware (*see infra* p.6), a private right of action to enforce an alleged violation of a federal statute must be created by Congress, not by an agency rule.  No such private right of action exists under SEC Rule 38a-1.

---

[4] Any attempt by Plaintiff to "bootstrap" himself into the use of § 47(b) by claiming a violation of a section of **another** statute, *e.g.,* the Investment Advisers Act, is unavailing under the plain language of § 47(b), which requires a violation of "**this subchapter,** or of any rule, regulation, or order thereunder."  This subchapter refers to the Investment Company Act of 1940.  *See* 15 U.S.C. § 80a-51.

5

The Supreme Court in *Alexander* v. *Sandoval*, 532 U.S. 275, 291 (2001), rejected the proposition that an agency rule can provide a private cause of action, stating:

> Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. *Touche Ross & Co.* v. *Redington*, 442 U.S. at 577, n. 18 ("The language of the statute and not the rules must control"). Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation can determine whether or not it is privately enforceable. But **it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself**. (emphasis supplied)

*Accord*: *Save Our Valley* v. *Sound Transit*, 335 F.3d 932, 939 (9th Cir. 2002):

> We believe the Supreme Court's *Sandoval* and *Gonzaga* decisions, taken together, compel the conclusion we reach today: that **agency regulations cannot independently create rights** enforceable through § 1983. Our conclusion should surprise no one, as it results directly from the broader, venerated constitutional law principle that **Congress, rather than the executive, is the lawmaker in our democracy**. (emphasis supplied)

This Court, itself, (Hon. Phyllis J. Hamilton), held in *Catholic Charities CYO v. Chertoff*, 622 F. Supp. 2d 865, 883 (N.D. Cal. 2008):

> A private right of action to enforce an alleged violation of a federal statute must be created by Congress.

*See also, Bonano v. East Caribbean Airline Corp.*, 365 F.3d 81, 84 (1st Cir. 2004) (citing *Sandoval*):

> A private right of action, like substantive federal law itself, must be created by Congress. In all events, a regulation, on its own, cannot create a private right of action. The source of any such right must be found in the text of the statute.

*See also, Janos v. Wells Fargo Bank, N.A.*, 2006 U.S. Dist. LEXIS 6758, at **18-20 (D. Ariz., Feb. 14, 2006) ("The Supreme Court has held that only rights-creating language in statutes, not

6

regulations, may underlay implication of a right of action." (citing *Sandoval*)).

If the Court agrees with our analysis in subpart 1, the First Cause of Action should be dismissed, and the Court need not reach subparts 2 or 3 of this Point I.

**2.   Further, no facts are alleged in the Complaint which, if proved, would show a violation of SEC Rule 38a-1.**

**A.   no facts alleged**:   To sustain a violation of SEC Rule 38a-1, even if there were a private right of action under Rule 38a-1 (which there is not), Plaintiff would need to allege facts showing that compliance policies and procedures had neither been adopted nor carried out by Franklin Custodian Funds, the registered investment company in this case.

SEC Rule 38a-1 is titled:   **"Compliance procedures and practices of certain investment companies"**.   Subpart (a) of the Rule states, in pertinent part:

> Each registered investment company and business develop-ment company ("fund") must:

The Rule then goes on to provide, in pertinent part, what registered investment companies must do and not do in the area of compliance policies and procedures.

No facts are pleaded in the Complaint identifying any defect in the compliance policies and procedures of Franklin Custodian Funds, the registered investment company in this case. Accordingly, even if there were a private right of action under SEC Rule 38a-1 (which there is not), there are no facts pleaded which, if proved, would demonstrate a violation of SEC Rule 38a-1.

**B.   *Financial Planning Ass'n* irrelevant**:   The Complaint, as noted *supra*, p.3, is wholly reliant on the Opinion in *Financial Planning Ass'n*.   That Opinion is irrelevant to the 12b-1 fees challenged at bar.

Some context may be of assistance to the Court:  as the Opinion makes clear, in 2005 the SEC promulgated a rule under the Investment Advisers Act (not the Investment Company Act) expanding the category of broker-dealers exempt from registration under the Investment Advisers Act.  The additionally exempted broker-dealers were to include those who received "special compensation" for investment advice where the investment advice was "incidental" to brokerage services.

The Financial Planning Association, a trade group of financial planners, challenged the Rule in Court, contending that it gave broker-dealers an unfair advantage over financial planners who, of course, were required to register under the Investment Advisers Act.

The D.C. Circuit Court of Appeals struck down the Rule, as exceeding the authority of the SEC.  The Court reasoned that Congress, in the Investment Advisers Act, had set out the categories of broker-dealers who were exempt from registration and it was beyond the powers of the SEC to add other categories of broker-dealers to those identified in the Investment Advisers Act.

The fees that were being paid to the broker-dealers in that case were for *services to customers*, including, particularly, investment advice.  The fees paid under SEC Rule 12b-1, by contrast, are paid by the Fund in connection with the *distribution of Fund shares*, a very different function, and one governed by SEC Rule 12b-1 promulgated under the Act.  SEC Rule 12b-1 fees were neither discussed nor, in any way, part of the Opinion in *Financial Planning Ass'n*.

Moreover, even if *Financial Planning Ass'n* had been held by the Court to apply to 12b-1 fees (which was not the case), that would <u>not</u> have meant that payment of such fees violated the Act – rather it would have meant only that the broker-dealers who received such fees were required to register under the Investment Advisers Act.  SEC Rule 38a-1, relied on by Plaintiff,

NOTICE OF MOTION, MOTION AND MEMORANDUM IN SUPPORT OF MOTION
 OF DEFENDANTS TO DISMISS THE COMPLAINT
C-09-4775 PJH
ME1 9521406v.1

does not impose on funds a duty to assure that broker-dealers comply with registration requirements. Rather, it requires funds to adopt and implement compliance programs that are "reasonably designed to prevent violation of the Federal Securities Laws by the *fund...*" (emphasis supplied) and to provide oversight of compliance by certain entities specified in the Rule, which entities include the adviser, principal underwriter, administrator and transfer agent, but do <u>not</u> include compliance oversight responsibility for the broker-dealer firms referenced or identified in the Complaint as the recipients of the 12b-1 fees (*e.g.*, Merrill Lynch, *see* Complaint, para. 10).

    **C. the bar of Section 38(c)**: Finally, the claim in this case is barred by § 38(c) of the Act, 15 U.S.C. 80a-37, **Rules, Regulations and Orders**. Under that section, the payment of 12b-1 fees by Defendants, because paid "in good faith in conformity" with SEC Rule 12b-1, <u>cannot</u> provide a basis for liability under the Act. Section 38(c) provides as follows:

> No provision of this subchapter imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation or order of the Commission, notwithstanding that such rule, regulation or order may, after such act or omission, be amended or rescinded or be determined by judicial or other authority to be invalid for any reason.

    There can be no dispute, at bar, that the challenged payments, *i.e.* the 12b-1 fees, were made "in good faith in conformity" with SEC Rule 12b-1. Plaintiff concedes as much in his Complaint ("[The payments at issue are made] [p]ursuant to distribution plans approved by a majority of the independent Trustees under SEC Rule 12b-1, 17 C.F.R. § 270.12b-1, ...." (Complaint, para. 41).

    If the Court agrees with our analysis in this subpart 2, the First Cause of Action should be dismissed and the Court need not reach subpart 3 of this Point I.

NOTICE OF MOTION, MOTION AND MEMORANDUM IN SUPPORT OF MOTION
 OF DEFENDANTS TO DISMISS THE COMPLAINT
 C-09-4775 PJH
 ME1 9521406v.1

3.  **In any event, SEC Rule 38a-1 does not apply to Franklin/Templeton Distributors (the sole defendant on the First Cause of Action) because it is not a registered investment company.**

Even if the Court were to conclude that violation of an agency rule can provide the predicate for invoking § 47(b) (which it should not), this <u>particular</u> rule, SEC Rule 38a-1, cannot provide the predicate violation at bar because, by its own terms, the entities SEC Rule 38a-1 places obligations on are registered investment companies, and Franklin/Templeton Distributors is, indisputably, not a registered investment company.

SEC Rule 38a-1 obligates a "**registered investment company**" to "[a]dopt and implement written policies and procedures reasonably designed to prevent violation of the Federal Securities Laws by the fund..." and to "[o]btain the approval of the fund's board of directors ... of the fund's policies and procedures...."  Because Franklin/Templeton Distributors is not a registered investment company, it cannot, itself, violate SEC Rule 38a-1 and SEC Rule 38a-1 cannot provide the requisite predicate violation for invocation of § 47(b) at bar. *See, Northstar Fin. Advisors, Inc. v. Schwab Inv.*, 609 F. Supp. 2d 938, 945 n.4 (N.D. Cal. 2009), *app. pending on other grounds* (because "by its express terms, Section 13(a) [of the Act] applies only to a registered investment company," the claims against defendants other than investment companies are dismissed).

**Point II --**

**The Court Should Decline to Exercise
Supplemental Jurisdiction over
the State Law Claims**

If the Court dismisses the Federal claim (First Cause of Action), we respectfully submit that it should then, in the exercise of its sound discretion, decline to exercise supplemental jurisdiction over the three State law claims (Second, Third and Fourth Causes of Action).  *See,*

10

*e.g.*, this Court's Opinion in *Brown v. Mailroom Processor #14*, 2007 U.S. Dist. LEXIS 18405, at *3 (N.D. Cal. Feb. 27, 2007) (Hamilton, J.); *see also Binder v. Gillespie*, 184 F. 3d 1059, 1066 (9th Cir. 1999), *cert. den.*, 528 U.S. 1154 (2000); *Voight v. Savell*, 70 F. 3d 1552, 1565 (9th Cir. 1995), *cert. den.*, 517 U.S. 1209 (1996).  This doctrine is particularly applicable where, as here, an action is in its earliest stages.  *See, e.g., Rojas v. Brinderson Constructors, Inc.*, 567 F. Supp. 2d 1205, 1212 (C.D. Cal. 2008) (no substantial commitment of judicial resources to the nonfederal claims).

**Point III --**

**The Complaint Should Be Dismissed
For Failure To Comply With Rule 23.1 of the
Federal Rules of Civil Procedure and Delaware Law**

**A.   The Strict Pleading Requirements of Fed. R. Civ. P. 23.1
       and Delaware's Business Judgment Rule**

As a derivative suit, Plaintiff's Complaint must comply with Rule 23.1 of the Federal Rules of Civil Procedure.  Rule 23.1 states that "[t]he complaint must be verified and **must** … **state with particularity** any effort by the plaintiff to obtain the desired action from the directors … and the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1 (emphasis added).  As Judge Armstrong explained, to "withstand a motion to dismiss under Rule 23.1, the plaintiff must allege **particular facts**" demonstrating that the directors' refusal of his demand "was not made in an informed manner, with due care, and in a good faith belief that refusing to pursue the litigation demanded was in the best interest of the corporation."  *Furman v. Walton*, 2007 WL 1455904, at *3 (N.D. Cal. May 16, 2007), *aff'd*, 320 Fed. Appx 638 (9th Cir.

11

1   Mar. 26, 2009) (emphasis added).[5]

2       The Supreme Court has explained the "origin and purposes" of Rule 23.1 as grounded in

3   "the basic principle of corporate governance that the decisions of a corporation – including the

4   decision to initiate litigation – should be made by the board of directors." *Daily Income Fund v.*

5   *Fox*, 464 U.S. 523, 530 (1984).  This "'demand requirement' affords the directors an opportunity

6   to exercise their reasonable business judgment and 'waive a legal right vested in the corporation in

7   the belief that its best interests will be promoted by not insisting on such right.'"  *Id.* at 533

8
9   (citation omitted).

10      Although Rule 23.1 "speaks . . . to the adequacy of the shareholder representative's

11  pleadings," federal courts should apply the substantive law of the company's state of incorporation

12  to determine what facts must be pleaded regarding demand.  *Kamen v. Kemper Fin. Servs., Inc.*,

13
14  500 U.S. 90, 96-97 (1991).[6]   Here, the Trust is a Delaware statutory trust, so Delaware law

15  applies.  (Complaint, para. 11).

16      A bedrock principle of Delaware law is the business judgment rule, which "is a

17  presumption that in making a business decision, not involving self-interest, the directors of a

18  corporation acted on an informed basis, in good faith and in the honest belief that the action taken

19
20  was in the best interests of the company."  *Spiegel v. Buntrock,* 571 A.2d 767, 774 (Del. 1990)

21  (citations omitted).  "If a board's decision can be attributed to any rational business purpose, . . . a

22  court will not substitute its judgment for that of a board."  *Levine v. Smith*, 591 A.2d 194, 207

23  [5]  *See also Mitzner v. Hastings,* 2005 WL 88966, at *4 (N.D. Cal. Jan. 14, 2005) ("[o]n a motion
24      to dismiss for failure to comply with the requirements of Rule 23.1, . . . .  Plaintiff's pleading
        burden is [] more onerous than that required to withstand an ordinary motion to dismiss").

25  [6]  *Accord In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989-90 (9th Cir. 1999) (applying
        law of state of incorporation), *reh'g en banc denied*, 195 F.3d 521 (9th Cir. 1999); *Furman*,
26      2007 WL 1455904, at *2 ("[i]n assessing particularity as required by Rule 23.1, the court
27      looks to the law of the state of incorporation of the company").

28
NOTICE OF MOTION, MOTION AND MEMORANDUM IN SUPPORT OF MOTION
OF DEFENDANTS TO DISMISS THE COMPLAINT
C-09-4775 PJH
ME1 9521406v.1

1   (Del. 1991) (internal quotations and citations omitted), *overruled on other grounds by Brehm v.*

2   *Eisner*, 746 A.2d 244 (Del. 2000).

3          The Supreme Court of Delaware has made clear that the business judgment rule applies

4   when a board refuses a shareholder demand:

5
6                  Since a conscious decision by a board of directors to refrain from
                   acting may be a valid exercise of business judgment, "where demand
6                  on a board has been made and refused, [courts] apply the business
                   judgment rule in reviewing the board's refusal to act pursuant to a
7                  stockholder's demand" to file a lawsuit.

8   *Spiegel,* 571 A.2d at 773-74 (quoting *Aronson v. Lewis*, 473 A.2d 805, 813 (Del. 1984)).  "Thus,

9
10  the business judgment rule operates as a judicial acknowledgment of a board of directors'

11  managerial prerogatives," and "[t]he burden is on the party challenging the decision [*i.e.*, the

12  demand refusal] to establish facts rebutting th[is] presumption."  *Spiegel,* 571 A.2d at 774

13  (citations omitted).  Where a plaintiff fails to meet his/her burden – under Rule 23.1 and Delaware

14  law – of pleading particularized facts demonstrating that the board's refusal of a demand is not

15  entitled to protection of the business judgment rule, courts should dismiss a derivative complaint.[7]

16          Judge Armstrong, in *Furman*, reiterated this principle in applying Delaware law and

17  dismissing a derivative complaint:  "[i]f a demand is made and rejected, the board rejecting the

18
19  demand is entitled to the presumption of the business judgment rule unless the stockholder can

20  allege facts with particularity creating a reasonable doubt that the board is not entitled to the

21  benefit of the presumption."  *Furman*, 2007 WL 1455904, at *2.

22

23

24  ───────────────
    [7]  *See, e.g., Spiegel,* 571 A.2d at 777-78 ("if the requirements of the traditional business judgment
25       rule are met, the board of directors' decision not to pursue the derivative claim will be
         respected by the courts," and "a board of directors' motion to dismiss an action filed by a
26       shareholder, whose demand has been rejected, must be granted"); *Furman*, 2007 WL
         1455904, at *3.
27

                                                      13
28

**B. The Complaint Fails to Plead Particularized Facts Required
to Rebut the Business Judgment Presumption**

Plaintiff's Complaint fails to allege with particularity facts explaining why the Board of Trustees' refusal of Plaintiff's demand was unreasonable or made in bad faith.[8]  Plaintiff's attempt to overcome the business judgment presumption consists of a single sentence in his 26-page Complaint:  that the March 4, 2009 Response Letter "does not give any business judgment reasons for the Board of Trustees' failure to act."  (Complaint, para. 80).  This contention is meritless.  Directors need not, to be entitled to the protection of the business judgment rule, articulate in their refusal letter their reasons for rejecting a shareholder's demand.

For example, in *Levine*, The Board's refusal letter stated:

> Please be advised that on January 5, 1987, following review of the matters set forth in your December 11, 1986 letter, the Board of Directors of General Motors Corporation unanimously determined that an attempt to rescind, or litigation, or other action concerning the transaction [at issue] . . .  is not in the best interests of the Corporation.  Accordingly, the board refused your demands.

591 A.2d at 214 n.9.  The plaintiff's derivative complaint alleged that this brief answer showed that the Board "did nothing" in response to the plaintiff's demand that the Board rescind a shareholder buyout agreement.  *Id.* at 214.  The Supreme Court of Delaware dismissed the plaintiff's allegations as conclusory and held that:

> [T]he Board's letter response refusing Levine's demand "following review of the matters" which were the subject of Levine's demand letter of December 11, 1986 reflects on its face the GM Board's consideration of Levine's demand.  The only reasonable inference to be drawn from this document is that the GM directors did act in an informed manner in addressing Levine's demand.

*Id.*   The court thus affirmed dismissal of the derivative complaint "for failure to plead particularized facts sufficient to create a reasonable doubt that the GM Board's rejection of

---

[8]  By making a demand upon a board before commencing litigation, Plaintiff has conceded the independence of a majority of the board to respond to the demand.  *Levine*, 591 A.2d at 212.

14

1   Levine's demand was wrongful because reached in an uninformed manner."  *Id.* at 215.

2        In a related action, *In re General Motors Class E Stock Buyout Sec. Litig.*, 790 F. Supp. 77

3   (D. Del. 1992) ("*GM Securities Litigation*"), the District Court of Delaware applied *Levine* and

4   Delaware law and similarly dismissed the plaintiff's derivative complaint.   In *GM Securities*

5   *Litigation*, the plaintiff demanded that GM's Board bring an action regarding a stock purchase,

6   and the Board's refusal letter – dated twelve days after the demand – stated that "following review

7   of the matters" in the demand letter, the Board "unanimously determined that an attempt to

8   rescind, or litigation, or other action concerning the transaction [at issue] is not in the best interests

9   of the Corporation."  *Id.* at 79.  The court noted that the GM Board's refusal letter thus "indicates

10  that the directors did review the matters at issue before they acted."  *Id.*  at 81.  In contrast,

11

12          Plaintiffs rebut this evidence and the attending business judgment
            presumption accorded a refusal of demand with allegations that do no
13          more than state, in conclusory fashion, plaintiff's ultimate
            contentions:  that GM's Board failed in the first instance to conduct
14          an adequate inquiry as to the merits of the underlying transaction and
            failed subsequently to conduct any inquiry in response to plaintiffs'
15          prelitigation demands.  Plaintiffs' attempt to bootstrap the conclusory
            allegations concerning refusal of the demand with equally conclusory
16          allegations concerning approval of the underlying transaction is
            inconsistent with the principles announced in *Kamen* and *Levine*.
17

18  *Id.*  The court therefore concluded that the plaintiff's allegations "do not constitute particularized

19  facts sufficient to create a reasonable doubt" that the refusal was uninformed or wrongful.  *Id.*

20        Similarly, in *Baron v. Siff*, 1997 WL 666973, at *2 (Del. Ch. Oct. 17, 1997), the plaintiff

21  alleged that the refusal letter was proof that the Board "either failed to investigate the demand

22  letter altogether or inappropriately delegated the investigation to counsel," because that letter:

23

24          (1) was drafted and signed by counsel, (2) does not state that the
            Directors held a meeting to discuss the demand letter, (3) does not
25          respond to each allegation in the demand letter, (4) does not mention
            the Board until the second to the last line, and (5) is dated nine days
26          after the demand letter.

27
                                                    15
28

1    *Id.* The court disagreed and dismissed the complaint, stating:

2    > There is no prescribed procedure that a Board must follow when
3    > investigating a demand under Rule 23.1. The refusal letter's failure to
     > state that the Board held a meeting and failure to contain a point-by-
4    > point response to all allegations in the demand letter does not stand
     > for the proposition that the Board did not consider the demand before
5    > refusing it.

6    *Id.* at *3.

7         In this case, as in *Levine, GM Securities Litigation* and *Baron*, the March 4 Response

8    Letter <u>on its face</u> demonstrates that the board "carefully considered" Plaintiff's demands and made

9    a determination that "the demands are not well-founded, as a matter of law." (Complaint, Ex. 2).

10   Thus, "[t]he only reasonable inference to be drawn from [the Response Letter] is that [the Board]

11   did act in an informed manner in addressing [Plaintiff's] demand," thus defeating Plaintiff's claim.

12   *Levine*, 591 A.2d at 214. The Complaint's single and wholly conclusory allegation that the refusal

13   was "wrongful" does not constitute "an ***allegation of particularized facts*** sufficient to rebut the

14   presumption of the business judgment rule." *Baron,* 1997 WL 666973, at *2 (emphasis in

15   original); *accord Furman*, 2007 WL 1455904, at *5.[9] The Complaint alleges no facts – let alone

16   particularized facts – that, if true would show that the Board's decision to refuse Plaintiff's

17   demand was not a rational business judgment. This Court therefore should dismiss the Complaint

18   for failure to comply with Rule 23.1 and Delaware law.

19

20

21   _____

22   [9] In *Grimes v. Donald*, 673 A.2d 1207, 1220 (Del. 1996), *overruled on other grounds by Brehm v.
     *Eisner,* 746 A.2d 244 (Del. 2000), the Supreme Court of Delaware held that the plaintiff
23   failed to allege wrongful refusal with particularity when he "recite[d] the Board's rejection
     of Grimes' demand and proceed[ed] to assert why [he] disagree[d] with the Board's
24   conclusion." The Court also found that the complaint contained only "conclusory, *ipse dixit*,
     assertions" that "the refusal could not have been the result of an adequate, good faith
25   investigation since the Board decided not to act on the demand." The court thus affirmed
     dismissal of the complaint for "fail[ure] to include particularized allegations which would
26   raise a reasonable doubt that the Board's decision to reject the demand was the product of a
     valid business judgment." *Id.*

27

28

NOTICE OF MOTION, MOTION AND MEMORANDUM IN SUPPORT OF MOTION
OF DEFENDANTS TO DISMISS THE COMPLAINT
C-09-4775 PJH
ME1 9521406v.1

1

## CONCLUSION

2

For the reasons stated herein, the Court should dismiss the Verified Derivative Complaint

3

with prejudice.[10]

4

Dated:   January 22, 2010

5

6

McCARTER & ENGLISH, LLP

7

/s/  Daniel A. Pollack

By:_____

8

Daniel A. Pollack
Edward T. McDermott
Anthony Zaccaria

9

10

245 Park Avenue, 27th Floor
New York, NY 10167
Telephone:  (212) 609-6800
Facsimile:   (212) 609-6921

11

12

*Attorneys for Defendants Franklin/Templeton
Distributors, Inc., Charles B. Johnson and
Rupert H. Johnson*

13

14

*- and -*

15

GOODWIN PROCTER LLP

16

17

/s/  Mark Holland

By:_____

Mark Holland
Mary K. Dulka

18

The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone:  (212) 813-8800
Facsimile:   (212) 355-3333

19

20

21

*Attorneys for Defendants Ashton, Carlson, Ginn,*

22

23

[10] If the Court declines to dismiss the Complaint in its entirety, it should, we respectfully submit, rule that Plaintiff has standing to sue derivatively on behalf of only the one mutual fund in which Plaintiff allegedly owns and owned shares at the time of the alleged wrongdoing — namely, Franklin Income Fund (*see* Complaint, para. 10). *See Stegall v. Ladner*, 394 F. Supp. 2d 358, 362 (D. Mass. 2005); *In re Mutual Funds Invest. Litig.*, 519 F. Supp. 2d 580, 588-90 (D. Md. 2007) (plaintiff has standing to sue derivatively on behalf of only the specific "series" or fund in which he owns shares, rather than all the funds maintained under the name of the registered investment company).

24

25

26

27

17

28

NOTICE OF MOTION, MOTION AND MEMORANDUM IN SUPPORT OF MOTION
OF DEFENDANTS TO DISMISS THE COMPLAINT
C-09-4775 PJH
ME1 9521406v.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Holiday, Lahaye, Olson, Thompson, Wilson, Franklin Custodian Funds*

- and -

**GOODWIN PROCTER LLP**


/s/  Lloyd Winawer

By:_____

Lloyd Winawer
(State Bar No. 157823)
*lwinawer@goodwinprocter.com*
135 Commonwealth Drive
Menlo Park, CA 94025-1105
Telephone:  (650) 752-3100
Facsimile:  (650) 853-1038

*Attorneys for All Defendants*[11]

Of Counsel:
    Brian E. Lorenz, Esq.

_____

[11] With the express consent of Plaintiff's counsel and in the interests of financial economy and judicial efficiency, Goodwin Procter LLP, California, is serving as Counsel for All Defendants, through this Motion to Dismiss, and All Defendants are submitting a single brief.

18

1

2

3

**<u>PROOF OF SERVICE</u>**

4

I further certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non registered participants on this 22nd
day of January, 2010.

5

6

7

  /s/ Lloyd Winawer
Lloyd Winawer

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*ADDENDUM A*

# SECTION 47 of the ACT

Sec. 80a-46. Validity of contracts

(a) Waiver of compliance as void Any condition, stipulation, or provision binding any person to waive compliance with any provision of this subchapter or with any rule, regulation, or order thereunder shall be void. (b) Equitable results; rescission; severance (1) A contract that is made, or whose performance involves, a violation of this subchapter, or of any rule, regulation, or order thereunder, is unenforceable by either party (or by a nonparty to the contract who acquired a right under the contract with knowledge of the facts by reason of which the making or performance violated or would violate any provision of this subchapter or of any rule, regulation, or order thereunder) unless a court finds that under the circumstances enforcement would produce a more equitable result than nonenforcement and would not be inconsistent with the purposes of this subchapter. (2) To the extent that a contract described in paragraph (1) has been performed, a court may not deny rescission at the instance of any party unless such court finds that under the circumstances the denial of rescission would produce a more equitable result than its grant and would not be inconsistent with the purposes of this subchapter. (3) This subsection shall not apply (A) to the lawful portion of a contract to the extent that it may be severed from the unlawful portion of the contract, or (B) to preclude recovery against any person for unjust enrichment.

-SOURCE- (Aug. 22, 1940, ch. 686, title I, Sec. 47, 54 Stat. 845; Pub. L. 96- 477, title I, Sec. 104, Oct. 21, 1980, 94 Stat. 2277.)

*ADDENDUM  B*

# SEC RULE 38a-1

*17 CFR 270.38a-1*

§ 270.38a-1 Compliance procedures and practices of certain investment companies.

(a) Each registered investment company and business development company ("fund") must:

(1) Policies and procedures. Adopt and implement written policies and procedures reasonably designed to prevent violation of the Federal Securities Laws by the fund, including policies and procedures that provide for the oversight of compliance by each investment adviser, principal underwriter, administrator, and transfer agent of the fund;

(2) Board approval. Obtain the approval of the fund's board of directors, including a majority of directors who are not interested persons of the fund, of the fund's policies and procedures and those of each investment adviser, principal underwriter, administrator, and transfer agent of the fund, which approval must be based on a finding by the board that the policies and procedures are reasonably designed to prevent violation of the Federal Securities Laws by the fund, and by each investment adviser, principal underwriter, administrator, and transfer agent of the fund;

(3) Annual review. Review, no less frequently than annually, the adequacy of the policies and procedures of the fund and of each investment adviser, principal underwriter, administrator, and transfer agent and the effectiveness of their implementation;

(4) Chief compliance officer. Designate one individual responsible for administering the fund's policies and procedures adopted under paragraph (a)(1) of this section:

(i) Whose designation and compensation must be approved by the fund's board of directors, including a majority of the directors who are not interested persons of the fund;

(ii) Who may be removed from his or her responsibilities by action of (and only with the approval of) the fund's board of directors, including a majority of the directors who are not interested persons of the fund;

(iii) Who must, no less frequently than annually, provide a written report to the board that, at a minimum, addresses:

(A) The operation of the policies and procedures of the fund and each investment adviser, principal underwriter, administrator, and transfer agent of the fund, any material changes made to those policies and procedures since the date of the last report, and any material changes to the policies and procedures recommended as a result of the annual review conducted pursuant to paragraph (a)(3) of this section; and

(B) Each Material Compliance Matter that occurred since the date of the last report; and

(iv) Who must, no less frequently than annually, meet separately with the fund's independent directors.

(b) Unit investment trusts. If the fund is a unit investment trust, the fund's principal underwriter or depositor must approve the fund's policies and procedures and chief compliance officer, must receive all annual reports, and must approve the removal of the chief compliance officer from his or her responsibilities.

(c) Undue influence prohibited. No officer, director, or employee of the fund, its investment adviser, or principal underwriter, or any person acting under such person's direction may directly or indirectly take any action to coerce, manipulate, mislead, or fraudulently influence the fund's chief compliance officer in the performance of his or her duties under this section.

(d) Recordkeeping. The fund must maintain:

(1) A copy of the policies and procedures adopted by the fund under paragraph (a)(1) that are in effect, or at any time within the past five years were in effect, in an easily accessible place; and

(2) Copies of materials provided to the board of directors in connection with their approval under paragraph (a)(2) of this section, and written reports provided to the board of directors pursuant to paragraph (a)(4)(iii) of this section (or, if the fund is a unit investment trust, to the fund's principal underwriter or depositor, pursuant to paragraph (b) of this section) for at least five years after the end of the fiscal year in which the documents were provided, the first two years in an easily accessible place; and

(3) Any records documenting the fund's annual review pursuant to paragraph (a)(3) of this section for at least five years after the end of the fiscal year in which the annual review was conducted, the first two years in an easily accessible place.

(e) Definitions. For purposes of this section:

(1) Federal Securities Laws means the Securities Act of 1933 (*15 U.S.C. 77a-*aa), the Securities Exchange Act of 1934 (*15 U.S.C. 78a-*mm), the Sarbanes-Oxley Act of 2002 (Pub. L. 107-204, *116 Stat. 745 (2002)),* the Investment Company Act of 1940 *(15 U.S.C. 80a),* the Investment Advisers Act of 1940 *(15 U.S.C. 80b),* Title V of the Gramm-Leach-Bliley Act (Pub. L. No. 106-102, *113 Stat. 1338 (1999),* any rules adopted by the Commission under any of these statutes, the Bank Secrecy Act (*31 U.S.C. 5311-5314;* 5316-5332) as it applies to funds, and any rules adopted thereunder by the Commission or the Department of the Treasury.

17 CFR 270.38a-1

(2) A Material Compliance Matter means any compliance matter about which the fund's board of directors would reasonably need to know to oversee fund compliance, and that involves, without limitation:

(i) A violation of the Federal securities laws by the fund, its investment adviser, principal underwriter, administrator or transfer agent (or officers, directors, employees or agents thereof),

(ii) A violation of the policies and procedures of the fund, its investment adviser, principal underwriter, administrator or transfer agent, or

(iii) A weakness in the design or implementation of the policies and procedures of the fund, its investment adviser, principal underwriter, administrator or transfer agent.

*ADDENDUM  C*

# SEC RULE 12b-1

*17 CFR 270.12b-1*

§ 270.12b-1 Distribution of shares by registered open-end management investment company.

(a)(1) Except as provided in this section, it shall be unlawful for any registered open-end management investment company (other than a company complying with the provisions of section 10(d) of the Act (*15 U.S.C. 80a-10(d)*)) to act as a distributor of securities of which it is the issuer, except through an underwriter;

(2) For purposes of this section, such a company will be deemed to be acting as a distributor of securities of which it is the issuer, other than through an underwriter, if it engages directly or indirectly in financing any activity which is primarily intended to result in the sale of shares issued by such company, including, but not necessarily limited to, advertising, compensation of underwriters, dealers, and sales personnel, the printing and mailing of prospectuses to other than current shareholders, and the printing and mailing of sales literature;

(b) A registered, open-end management investment company ("Company") may act as a distributor of securities of which it is the issuer: Provided, That any payments made by such company in connection with such distribution are made pursuant to a written plan describing all material aspects of the proposed financing of distribution and that all agreements with any person relating to implementation of the plan are in writing: And further provided, That:

(1) Such plan has been approved by a vote of at least a majority of the outstanding voting securities of such company, if adopted after any public offering of the company's voting securities or the sale of such securities to persons who are not affiliated persons of the company, affiliated persons of such persons, promoters of the company, or affiliated persons of such promoters;

17 CFR 270.12b-1

(2) Such plan, together with any related agreements, has been approved by a vote of the board of directors of such company, and of the directors who are not interested persons of the company and have no direct or indirect financial interest in the operation of the plan or in any agreements related to the plan, cast in person at a meeting called for the purpose of voting on such plan or agreements;

(3) Such plan or agreement provides, in substance:

(i) That it shall continue in effect for a period of more than one year from the date of its execution or adoption only so long as such continuance is specifically approved at least annually in the manner described in paragraph (b)(2) of this section;

(ii) That any person authorized to direct the disposition of monies paid or payable by such company pursuant to the plan or any related agreement shall provide to the company's board of directors, and the directors shall review, at least quarterly, a written report of the amounts so expended and the purposes for which such expenditures were made; and

(iii) In the case of a plan, that it may be terminated at any time by vote of a majority of the members of the board of directors of the company who are not interested persons of the company and have no direct or indirect financial interest in the operation of the plan or in any agreements related to the plan or by vote of a majority of the outstanding voting securities of such company;

(iv) In the case of an agreement related to a plan:

(A) That it may be terminated at any time, without the payment of any penalty, by vote of a majority of the members of the board of directors of such company who are not interested persons of the company and have no direct or indirect financial interest in the operation of the plan or in any agreements related to the plan or by vote of a majority of the outstanding voting securities of such company on not more than sixty days' written notice to any other party to the agreement, and

(B) For its automatic termination in the event of its assignment;

(4) Such plan provides that it may not be amended to increase materially the amount to be spent for distribution without shareholder approval and that all material amendments of the plan must be approved in the manner described in paragraph (b)(2) of this section; and

(5) Such plan is implemented and continued in a manner consistent with the provisions of paragraphs (c), (d), and (e) of this section;

(c) A registered open-end management investment company may rely on the provisions of paragraph (b) of this section only if its board of directors satisfies the fund governance standards as defined in § 270.0-1(a)(7);

(d) In considering whether a registered open-end management investment company should implement or continue a plan in reliance on paragraph (b) of this section, the directors of such company shall have a duty to request and evaluate, and any person who is a party to any agreement with such company relating to such plan shall have a duty to furnish, such information as may reasonably be necessary to an informed determination of whether such plan should be implemented or continued; in fulfilling their duties under this paragraph the directors should consider and give appropriate weight to all pertinent factors, and minutes describing the factors considered and the basis for the decision to use company assets for distribution must be made and preserved in accordance with paragraph (f) of this section;

17 CFR 270.12b-1

NOTE: For a discussion of factors which may be relevant to a decision to use company assets for distribution, see Investment Company Act Releases Nos. 10862, September 7, 1979, and 11414, October 28, 1980.

(e) A registered open-end management investment company may implement or continue a plan pursuant to paragraph (b) of this section only if the directors who vote to approve such implementation or continuation conclude, in the exercise of reasonable business judgment and in light of their fiduciary duties under state law and under sections 36(a) and (b) (*15 U.S.C. 80a-35 (a) and (b)*) of the Act, that there is a reasonable likelihood that the plan will benefit the company and its shareholders;

(f) A registered open-end management investment company must preserve copies of any plan, agreement or report made pursuant to this section for a period of not less than six years from the date of such plan, agreement or report, the first two years in an easily accessible place;

(g) If a plan covers more than one series or class of shares, the provisions of the plan must be severable for each series or class, and whenever this section provides for any action to be taken with respect to a plan, that action must be taken separately for each series or class affected by the matter. Nothing in this paragraph (g) shall affect the rights of any purchase class under § 270.18f-3(e)(2)(iii); and

(h) Notwithstanding any other provision of this section, a company may not:

(1) Compensate a broker or dealer for any promotion or sale of shares issued by that company by directing to the broker or dealer:

(i) The company's portfolio securities transactions; or

(ii) Any remuneration, including but not limited to any commission, mark-up, mark-down, or other fee (or portion thereof) received or to be received from the company's portfolio transactions effected through any other broker (including a government securities broker) or dealer (including a municipal securities dealer or a government securities dealer); and

(2) Direct its portfolio securities transactions to a broker or dealer that promotes or sells shares issued by the company, unless the company (or its investment adviser):

(i) Is in compliance with the provisions of paragraph (h)(1) of this section with respect to that broker or dealer; and

(ii) Has implemented, and the company's board of directors (including a majority of directors who are not interested persons of the company) has approved, policies and procedures reasonably designed to prevent:

(A) The persons responsible for selecting brokers and dealers to effect the company's portfolio securities transactions from taking into account the brokers' and dealers' promotion or sale of shares issued by the company or any other registered investment company; and

(B) The company, and any investment adviser and principal underwriter of the company, from entering into any agreement (whether oral or written) or other understanding under which the company directs, or is expected to direct, portfolio securities transactions, or any remuneration described in paragraph (h)(1)(ii) of this section, to a broker (including a government securities broker) or dealer (including a municipal securities dealer or a government securities dealer) in

17 CFR 270.12b-1

consideration for the promotion or sale of shares issued by the company or any other registered investment company.