United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRADLEY C. SMITH,

        Plaintiff,

        v.

FRANKLIN/TEMPLETON
DISTRIBUTORS, INC., et al.,

        Defendants.

_____/

No. C 09-4775 PJH

**ORDER**

      Defendants' motion to dismiss the above-entitled action came on for hearing before this court on April 14, 2010.  Plaintiff appeared by his counsel Michael C. Spencer; defendant Franklin/Templeton Distributors, Inc. appeared by its counsel Daniel A. Pollack; and the defendant Trustees appeared by their counsel Mark Holland.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion.

**BACKGROUND**

      This is a shareholder derivative suit, brought by plaintiff Bradley C. Smith, derivatively on behalf of nominal defendant Franklin Custodian Funds, a Delaware Statutory Trust ("the Trust").  The Trust is classified under the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-1, et seq., as an "open-end management investment company" of the series type, and is comprised of five series, or portfolios, commonly known as "mutual funds" – Franklin DynaTech Fund, Franklin Growth Fund, Franklin Income Fund, Franklin U.S. Government Securities Fund, and Franklin Utilities Fund ("the Funds").  Plaintiff owns Class C shares in the Franklin Income Fund.

      Defendants are Franklin/Templeton Distributors, Inc. ("FTD"), and certain members of the board of trustees of the Trust – Harris J. Ashton, Robert F. Carlson, Sam Ginn, Edith

United States District Court

For the Northern District of California

1    Holiday, Frank W.T. LaHaye, Frank A. Olson, Larry D. Thompson, John B. Wilson, Charles

2    B. Johnson, and Rupert H. Johnson.  FTD is a New York Corporation, and is a broker-

3    dealer member of the Financial Industry Regulatory Authority ("FINRA").  FTD acts as

4    principal underwriter and distributor for shares in the Trust.  The defendant trustees are

5    alleged  to be independent board members for purposes of the ICA.

6         The Trust has elected to act as distributor of the shares of which it is the issuer.

7    Pursuant to written distribution plans adopted by the board of trustees, the Trust pays for

8    distribution-related services from the Trust's assets.  The Trust has appointed FTD as the

9    Trust's exclusive agent for performing distribution-related services, either directly or through

10   third parties.  Distribution agreements between the Trust and FTD authorize payment of

11   "asset-based compensation" to broker-dealers.  As distinguished from transactional

12   commissions, which are earned and paid based on purchase and sale of fund shares,

13   asset-based compensation consists of ongoing payments set at an annual percentage rate

14   of average daily net values of shares of the Trust, and are disbursed quarterly.

15        On January 8, 2009, plaintiff, represented by counsel, wrote a letter to the board of

16   trustees, claiming that payment of asset-based compensation to broker-dealers in

17   connection with brokerage accounts is unlawful under the Investment Advisers Act of 1940

18   ("IAA" or "Advisers Act"), 15 U.S.C. § 80b-1, et seq., based on the ruling in Financial

19   Planning Association v. SEC, 482 F.3d 481 (D.C. Cir. 2007).  Plaintiff asserted that present

20   and former trustees had acted with malfeasance and/or failed to exercise adequate

21   oversight in approving unlawful asset-based compensation to broker-dealers, and that this

22   action (or inaction) caused waste and injury to the Trust and reduced shareholders'

23   investment returns.

24        Plaintiff demanded that the trustees immediately cause the Trust to cease funding

25   and permitting the payment of ongoing non-transactional asset-based compensation to

26   broker-dealers in connection with Trust shares held in brokerage accounts in the United

27   States; and take all necessary and reasonable steps to restore to the Trust all payments of

28   such asset-based compensation in the past.  Plaintiff threatened to file a shareholder

1   derivative suit if a satisfactory response was not forthcoming within 60 days.

2       On March 4, 2009, the trustees responded, stating that they had sought and

3   carefully considered legal advice on the subject matter of the demands; had determined

4   that the demands were not well-founded, as a matter of law; and had declined to take the

5   steps (including litigation) proposed by plaintiff.

6       Plaintiff filed the present action on October 6, 2009, alleging four causes of action –

7   violation of § 47(b) of the ICA, 15 U.S.C. § 80a-46(b), against FTD; breach of contract,

8   against FTD; breach of fiduciary duty against the trustee defendants; and waste of trust

9   assets, against the trustee defendants.  Plaintiff alleges federal question jurisdiction,

10  pursuant to 28 U.S.C. § 1331 and § 1337, asserting that "each claim involves issues arising

11  under the ICA," and also alleges supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

12      Defendants now seek an order dismissing the complaint.  They argue that the first

13  cause of action, under ICA § 47(b), fails to state a legally cognizable claim, and should

14  therefore be dismissed; that the court should decline to exercise supplemental jurisdiction

15  over the remaining claims; that, in the alternative, the entire complaint should be dismissed

16  for failure to comply with Federal Rule of Civil Procedure 23.1 and Delaware law; and that,

17  as another alternative, if the court does not dismiss the complaint, it should at a minimum

18  find that plaintiff has standing to sue only with regard to the one fund that he owns shares

19  in, not as to all five funds that comprise the Trust.  Because the court finds that dismissal is

20  warranted under the first ground argued by defendants, the court does not address

21  defendants' alternative arguments.

22                              **DISCUSSION**

23  A.    Legal Standard

24      A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims

25  alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).

26  Review is limited to the contents of the complaint.  Allarcom Pay Television, Ltd. v. Gen.

27  Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for

28  failure to state a claim, a complaint generally must satisfy only the minimal notice pleading

United States District Court
For the Northern District of California

1   requirements of Federal Rule of Civil Procedure 8.

2       Rule 8(a)(2) requires only that the complaint include a "short and plain statement of

3   the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Specific

4   facts are unnecessary – the statement need only give the defendant "fair notice of the claim

5   and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (citing Bell

6   Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  All allegations of material fact are

7   taken as true.  Id. at 94.  However, a plaintiff's obligation to provide the grounds of his

8   entitlement to relief "requires more than labels and conclusions, and a formulaic recitation

9   of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and

10  quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a

11  right to relief above the speculative level." Id.

12      A motion to dismiss should be granted if the complaint does not proffer enough facts

13  to state a claim for relief that is plausible on its face. See id. at 558-59. "[W]here the

14  well-pleaded facts do not permit the court to infer more than the mere possibility of

15  misconduct, the complaint has alleged-but it has not 'show[n]' – 'that the pleader is entitled

16  to relief.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009).

17  B.   Statutory and Regulatory Background

18       1.   Investment Company Act

19      The ICA prohibits transactions in interstate commerce by investment companies that

20  are not registered with the SEC.  15 U.S.C. § 80a-7.  Under the ICA, an "investment

21  company" is any "issuer" that is engaged primarily in the business of investing, reinvesting,

22  or trading in securities.  15 U.S.C. § 80a-3.

23      A mutual fund is "a pool of assets consisting primarily of portfolio securities, and

24  belonging to the individual investors holding shares in the fund." Burks v. Lasker, 441 U.S.

25  471, 480 (1979).  A mutual fund is also defined as an "open-end investment company."

26  Investment Co. Institute v. Camp, 401 U.S. 607, 625 n.11 (1971).  An open-end company is

27  one "which is offering for sale or has outstanding any redeemable security of which it is the

28  issuer." 15 U.S.C. §  80a-5(a)(1).  Thus, mutual funds are required to register with the SEC

United States District Court
For the Northern District of California

1   as "investment companies."

2       Because mutual funds are not operated by their own employees, but rather by

3   external organizations called "investment advisers" – which are separately owned and

4   operated – a mutual fund cannot as a practical matter sever its relationship with the

5   adviser.  Burks, 441 U.S. at 480-81.  For this reason, the relationship between investment

6   advisers and mutual funds is potentially "fraught with potential conflicts of interest."  Id. at

7   481 (quotations and citations omitted).

8       Congress sought to minimize the possibilities of abuse of position by mutual fund

9   managers by enacting the ICA.  "This statute expanded the disclosure provisions already

10  applicable to the industry under the Securities Act of 1933, 15 U.S.C. § 77a, et seq., and

11  the Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq., and imposed specific

12  requirements as to the structure and operation of mutual funds."  Id. at 406.

13      To this end, the ICA requires that at least 40% of a fund's board be composed of

14  independent outside directors.  15 U.S.C. § 80a-10(a).  To these statutorily disinterested

15  directors, the ICA assigns special responsibilities, involving the supervision of management

16  and financial accounting.  Burks, 441 U.S. at 482-83.  Among other things, they have the

17  duty to review and approve the contracts of the investment advisor and the principal

18  underwriter.  15 U.S.C. § 80a-15(c); see Burks, 441 U.S. at 483.

19      Congress' purpose in structuring the ICA as it did was to place the unaffiliated

20  (independent) directors in the role of "independent watchdogs," as it gave them "primary

21  responsibility for looking after the interests of the funds' shareholders."  Burks, 441 U.S. at

22  484-85.  Plaintiff contends that the independent board members' role as "watchdogs" over

23  the service providers arises from § 36(a) of the ICA, 15 U.S.C. § 80a-35(a).

24      ICA § 36(a) provides that the SEC is authorized to bring an action alleging that any

25  person serving as an officer, director, or member of any registered advisory board,

26  investment advisor, or depositor, or as a principal underwriter of any registered open-end

27  company, unit investment trust, or face-amount certificate company, has breached the

28  fiduciary duties owed to such registered company.  Plaintiff claims that § 36(a) codifies the

United States District Court

For the Northern District of California

1   principle that the board of an investment company, and the service providers to an

2   investment company (including the distributor/underwriter), owe a fiduciary duty to the

3   investment company and its shareholders.

4          Plaintiff asserts further that SEC Rule 38a-1, 17 C.F.R. § 270.38a-1, implements the

5   existing ICA Section 36(a) duties by setting forth the Board's primary responsibility to

6   prevent, detect and correct violations of the "Federal Securities Laws" by service providers

7   and their agents.[1]

8          Rule 38a-1 requires that every registered investment company ("fund") adopt and

9   implement written policies and procedures ("policies and procedures") that are designed to

10  prevent violation of the federal securities laws by the fund, including policies and

11  procedures that provide for the oversight of compliance by each investment advisor,

12  principal underwriter, administrator, and transfer agent of the fund; obtain the approval of

13  the fund's board of directors, including a majority of the directors who are not interested

14  persons of the fund, of the policies and procedures; annually review the adequacy of the

15  policies and procedures; and designate an individual responsible for administering the

16  policies and procedures, who will issue an annual written report on the operation of the

17  policies and procedures and on any "material compliance matter" that has arisen since the

18  date of the last report. See 17 C.F.R. § 270.38a-1(a).  The rule also prohibits any official,

19  director, or employee of the fund, its investment adviser, or principal underwriter from

20  taking any action to coerce or unduly influence the fund's chief compliance officer. Id.

21  § 270.38a-1(c).

22         Thus, the focus of Rule 38a-1 is on the development and the implementation of

23  "policies and procedures" designed to ensure compliance with the federal securities laws

24  by the fund and its agents.  Plaintiff, however, asserts that based on this rule, "it is clear

25  that the job of a mutual fund trustee is to actively police service providers (including the

26

27  _____

28  [1]   For purposes of Rule 38a-1, "Federal Securities Laws" includes, among other statutes, both the ICA and the IAA, as well as any rules promulgated thereunder.  17 C.F.R. § 270.38a-1(e).

distributor/underwriter) for compliance with the federal securities laws." According to

plaintiff, one way to maintain compliance with ICA § 36(a) and SEC Rule 38a-1 is to

"promptly void unlawful contractual commitments." Plaintiff asserts that the drafters of the

ICA anticipated this need by including § 47(b) in the ICA.

> ICA § 47(b) provides, in relevant part:
>
> (1) A contract that is made, or whose performance involves, a violation of this subchapter, or of any rule, regulation, or order thereunder, is unenforceable by either party . . . unless a court finds that under the circumstances enforcement would produce a more equitable result than nonenforcement and would not be inconsistent with the purposes of this subchapter.
>
> (2) To the extent that a contract described in paragraph (1) has been performed, a court may not deny rescission at the instance of any party unless such court finds that the denial of rescission would produce a more equitable result than its grant . . . .

15 U.S.C. § 80a-46(b)(1), (2). The reference to "subchapter" throughout the statute is a

reference to the ICA (15 U.S.C. §§ 80a-1 to 80a-64).

Plaintiff claims that the provision in ICA § 47(b) – that "either party" to "a contract

that is made, or whose performance involves, a violation of [the ICA], or of any rule,

regulation, or order thereunder," may request "a court" to void the contract – imposes an

affirmative obligation on the boards of mutual funds to police compliance with the securities

laws (including the ICA, the IAA, and rules and regulations promulgated thereunder).

    2.    The Investment Advisers Act

The IAA mandates certain disclosure, liability, record-keeping and conflict

management requirements to protect the clients of professional investment advisers.

Unless a statutory exclusion applies, the IAA applies to full service broker-dealers, because

those firms make securities recommendations, conduct suitability reviews, and otherwise

provide investment advice to their customers. See 15 U.S.C. § 80b-2(11) ("investment

adviser" defined as "any person who, for compensation, engages in the business of

advising others. . . as to the value of securities or as to the advisability of investing in,

purchasing, or selling securities").

Under the IAA, investment advisers are required, among other things, to register and

United States District Court

For the Northern District of California

1    to maintain records, 15 U.S.C. § 80b-3(c) & (e); to limit the type of contracts they enter, id.

2    § 80b-5; and not to engage in certain types of deceptive and fraudulent transactions, id.

3    § 80b-6.  See Financial Planning, 482 F.3d at 484.

4        A broker-dealer firm may comply with the IAA by registering as an investment

5    adviser (commonly referred to as a "dual registrant").  Broker-dealers may avoid the IAA

6    regulation requirement if a statutory exclusion applies.  15 U.S.C. § 80b-3.  Pursuant to

7    what is known as the "Broker-Dealer Exclusion," IAA § 202(a)(11)(C) excludes from the

8    definition of investment adviser "any broker or dealer whose performance of such services

9    [advice] is solely incidental to the conduct of his business as a broker or dealer and who

10   receives no special compensation therefor."  15 U.S.C. § 80b-2(11)(C).

11   C.    Plaintiff's Claim under ICA § 47(b)

12       Plaintiff argues that the term "special compensation" as used in the Broker-Dealer

13   Exclusion in IAA § 202(a)(11)(C) means any form of compensation other than transactional

14   commissions (citing S. Rep. No. 76-1775, 76th Cong., 3d Sess. 22 (1940) (noting that IAA

15   § 202(a)(11)(C) applies to broker-dealers "insofar as their advice is merely incidental to

16   brokerage transactions for which they receive only brokerage commissions.")).  Plaintiff

17   asserts that asset-based compensation is "special compensation" under the IAA because it

18   is not a transactional commission.

19       Plaintiff contends that the form of compensation that a broker-dealer receives on a

20   particular customer account is determinative of what law governs the account.  He asserts

21   that accounts maintained by a broker-dealer that are subject to the IAA are commonly

22   referred to as "advisory accounts," and that accounts excluded from the IAA, and subject

23   only to broker-dealer regulation (Exchange Act and FINRA rules) are known as "brokerage

24   accounts."[2]  He contends that a broker-dealer that is not a dual registrant cannot offer

25

26       _____

27       [2] Under the IAA regulations, a broker or dealer "will not be deemed to be an investment
     adviser based solely on its receipt of special compensation" if certain conditions are met, and
     that a broker or dealer "is an investment adviser solely with respect to those accounts for which
28   it provides services or receives compensation that subject to the broker or dealer to the
     Advisers Act."  17 C.F.R. § 275.202(a)(11)-1(a)(1) and (c).

1    advisory accounts, and therefore is not eligible to receive "special compensation" or "asset-
2    based compensation."

3        According to plaintiff, in the 1990s, the broker-dealer industry became dissatisfied
4    with the prohibition against broker-dealers receiving asset-based compensation if they were
5    not registered as investment advisors under the IAA, because the transactional commission
6    system of compensation paid less than they would receive under an asset-based system.
7    Thus, also according to plaintiff, the broker-dealer industry "convinced" the SEC that it
8    would be good policy for broker-dealers to receive asset-based compensation, because
9    then they would not be "churning" accounts for transactional commissions; and that in
10   response, the SEC promulgated a regulation, pursuant to the statutory exception in IAA §
11   202(a)(11)(F), 15 U.S.C. § 80b-2(a)(11)(F) ("such other persons not within the intent of this
12   paragraph"). The Final Rule was adopted in April 2005.

13       According to plaintiff, the SEC used this new rule to authorize broker-dealers to
14   receive asset-based compensation with respect to brokerage accounts. The rule stated
15   that a broker-dealer "will not be deemed to be an investment adviser based solely on its
16   receipt of special compensation" if certain conditions were met, and that a broker dealer "is
17   an investment adviser solely with respect to those accounts for which it provides services
18   or receives compensation that subject the broker-dealer to the Advisers Act." 17 C.F.R.
19   § 275.202(a)(11)-1 (2005).

20       The rule was subsequently vacated in its entirety by the D.C. Circuit in Financial
21   Planning, on the basis that the SEC had exceeded its authority to promulgate rules and
22   regulations exempting "other persons." The court concluded that the legislative intent for
23   the clause did not support an exemption for "broker-dealer" that was broader than the
24   exemption set forth in clause (C), and that the SEC did not have the authority to broaden
25   the exemption by using clause (F). See Financial Planning, 482 F.3d at 487-93.

26       In the § 47(b) claim, plaintiff alleges that the Trust is entitled to void the broker-
27   dealer compensation provisions in the distribution agreement between the Trust and FTD.
28   According to plaintiff, those compensation provisions were made in violation of, and their

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  performance involves violations of, the ICA, to the extent that they authorize using Trust

2  assets for illegal payments (payment of asset-based compensation to broker-dealers).

3  Plaintiffs also assert that the broker-dealer compensation provisions violate the mandate of

4  the ICA and SEC Rule 38a-1 that the Trust and its service providers, and agents of service

5  providers, comply with all federal securities laws, including the IAA.  Plaintiff alleges further

6  that "past unlawful payments" to FTD and its agents constitute unjust enrichment that

7  should be "restituted" to the Trust by defendants, as set forth by plaintiff.

8      Plaintiff claims that the provision in ICA § 47(b)(1), authorizing "either party" to "a

9  contract" that violates the ICA or "any rule, regulation, or order thereunder" to request "a

10  court" to void the contract, imposes a duty on the Trust's board of trustees to pursue legal

11  actions to void any contractual commitments to pay illegal compensation (such as the

12  payment of asset-based compensation on brokerage accounts).

13  D.    Defendants' Motion

14      Defendants assert that ICA § 47(b) – the sole section of the ICA alleged to have

15  been violated – is strictly a remedy section, which provides a mechanism for equitable relief

16  when there is a violation of some other section of the ICA, or violation of a rule, regulation,

17  or order under the ICA.  Defendants argue that the § 47(b) claim must be dismissed

18  because plaintiff alleges no viable "predicate" violation.

19      In opposition, plaintiff asserts that § 47(b) does provide a private right of action, as it

20  refers to "a court" as the tribunal that will void an illegal contract, and refers to "either party"

21  to the contract as the person with the right to avoid the illegal contract.  Plaintiff claims that

22  § 47(b), as with its nearly identical counterparts in other securities laws (Securities

23  Exchange Act § 29(b), and IAA § 215(b)) has been properly viewed as providing an

24  independent and express private right of action.

25      The court finds that defendants' motion must be GRANTED.  By its terms, § 47(b)

26  provides a remedy for a violation of "any provision of [the ICA] or of any rule, regulation, or

27  order thereunder," rather than a distinct cause of action or basis for liability.  Courts that

28  have considered the issue have concluded that a plaintiff can seek relief under § 47(b) only

United States District Court

For the Northern District of California

1    by asserting a violation of some other section of the ICA.  See Davis v. Bailey, 2005 WL

2    3527286 at *6 (D. Colo., Dec. 22, 2005); Stegall v. Ladner, 394 F.Supp. 2d 358, 378 (D.

3    Mass. 2005); Jacobs v. Bremner, 378 F. Supp 2d 861, 869 (N.D. Ill. 2005); Mutchka v.

4    Harris, 373 F.Supp. 2d 1021, 1027 (C.D. Cal. 2005).  Here, plaintiff does not allege that any

5    other section of the ICA has been violated.

6         The court finds no language in ICA § 47(b) sufficient to create a private right of

7    action under that statute, absent a showing of some other violation of the ICA.  By contrast,

8    another section of the ICA – § 36(b) – clearly provides that "[a]n action may be brought

9    under [§ 36(b)] by . . . a security holder of such registered investment company on behalf of

10   such company . . . "  The absence of similar language in § 47(b) demonstrates that

11   Congress did not intend that § 47(b) provide an independent private cause of action.

12        Nor does SEC Rule 38a-1 itself create a private right of action under ICA § 47(b).  A

13   private right of action to enforce an alleged violation of a federal statute must be created by

14   Congress, not by an agency rule.  See Alexander v. Sandoval, 532 U.S. 275, 291 (2001).

15   As for the provision in § 47(b) relating to the "violation of . . . any rule [or] regulation" under

16   the ICA, there are no facts pled in the complaint which, if proved, would state a claim for

17   violation of Rule 38a-1.  As explained above in the "Statutory and Regulatory Background"

18   section, Rule 38a-1 lists various duties that are imposed on registered investment

19   companies in the area of compliance procedures and policies.  Plaintiff has pled no facts

20   identifying any defect in the Rule 38a-1-related compliance policies and procedures of

21   Franklin Custodian Funds, the registered investment company in this case.

22        The Financial Planning case, on which plaintiff relies, is irrelevant to the payment of

23   the distribution fees (known as "12b-1 fees"[3]) that plaintiff challenges in the present case.

24   The fees that were being paid to the broker-dealers in the Financial Planning case were for

25   services to customers, including fees for investment advice.  By contrast, in the present

26   _____

27        [3] The SEC requires mutual funds to break out and disclose separately three categories
     of fund expenses in the front of every fund prospectus:  "Management Fees;" Distribution or
28   "12b-1" fees; and "Other Expenses."  See Operating Local 649 Annuity Tr. Fund v. Smith
     Barney Fund Mgmt LLC, 595 F.3d 86, 93-94 (2nd Cir. 2010).

United States District Court

For the Northern District of California

1    case, the fees paid under SEC Rule 12b-1 are fees paid by a fund (here, the Trust) in

2    connection with the distribution of fund shares.[4]   The <u>Financial Planning</u> court did not

3    discuss Rule 12b-1 fees; and, even if the <u>Financial Planning</u> decision applied to Rule 12b-1

4    fees, that would not have meant that the payment of such fees violated the IAA – just that

5    the broker-dealers who received such fees would be required to register under the IAA.

6         In like manner, SEC Rule 38a-1 does not impose on funds a duty to assure that the

7    broker-dealers comply with registration requirements.  Rather, it requires funds to adopt

8    and implement compliance programs that are "reasonably designed to prevent violation of

9    the Federal Securities Laws by the fund" and to provide oversight of compliance by certain

10   entities specified in the Rule, which entities include the advisor, principal underwriter,

11   administrator, and transfer agent, but which do not include the broker-dealer firms

12   referenced or identified in the complaint as the recipients of the 12b-1 fees.

13        Finally, to the extent that plaintiff may be attempting to assert a violation of the IAA

14   as the predicate for the § 47(b) claim, the court notes that § 47(b) applies only to "[a]

15   contract that is made, or whose performance involves, a violation of" the ICA or any rule or

16   regulation promulgated thereunder – not a violation of the IAA.  Because the complaint

17   alleges no violation of the ICA which can provide a predicate for the claim under § 47(b),

18   the court finds that the § 47(b) claim fails to state a claim and must be dismissed.

**CONCLUSION**

20        In accordance with the foregoing, the court GRANTS the motion to dismiss the first

21   cause of action for violation of ICA § 47(b).  The dismissal is WITH LEAVE TO AMEND.

22   The amended complaint shall be filed no later than July 7, 2010.  Plaintiff may amend only

23

24        [4] SEC Rule 12b-1 was promulgated under the ICA (not the IAA).  Among other things,
25   it provides that it is generally unlawful for any registered open-end management investment
     company to act as a distributor of securities of which it is the issuer, except through an
26   underwriter.  However, a registered open-end management investment company may act as
     a distributor of securities of which it is the issuer provided that payments made by such
27   company in connection with the distribution are made pursuant to a written plan describing all
     material aspects of the proposed financing of distribution, and that such plan is approved by
28   a vote of the majority of voting securities and by a vote of the board of directors.  17 C.F.R. §
     270.12b-1.

the § 47(b) claim.  Any motion to dismiss the amended complaint shall address only the amended claim under § 47(b).

In the event that plaintiff is unable to state a claim under § 47(b), it is the court's intention to decline to exercise supplemental jurisdiction over the remaining state law claims, pursuant to 28 U.S.C. § 1367(c)(3), and to dismiss those claims without prejudice to refiling in state court.

**IT IS SO ORDERED.**

Dated:  June 8, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge